IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-01545-CNS-KLM

ALLSTATE INSURANCE COMPANY, an Illinois corporation,

      Plaintiff,

v.

RIVER CLIFF REALTY, LLC, a Colorado limited liability company, and
ERIKA JOYE,

      Defendants.

---

## ORDER

---

This matter is before the Court on Plaintiff Allstate Insurance Company's ("Allstate's") Motion for Default Judgment ("Motion") as to Defendant Erika Joye ("Defendant Joye") (ECF No. 26). Defendant Joye was served with Plaintiff's Complaint on July 27, 2022 and failed to respond (*See* ECF No. 14). On August 18, 2022, Plaintiff moved for entry of default against Defendant Joye, and the Clerk ultimately entered default on September 2, 2022 (ECF No. 20). Plaintiff filed its Motion, seeking entry of default judgment under Federal Rule of Civil Procedure 55(b)(2), on November 2, 2022 (ECF No. 26). For the reasons set forth below, the Court GRANTS Plaintiff's Motion.

# I. BACKGROUND[1]

Plaintiff seeks a declaratory judgment that it has no duty to defend and duty to indemnify River Cliff Realty, LLC ("River Cliff") in litigation initiated by Defendant Joye in state court (*see generally* ECF No. 1). On December 2, 2021, Defendant Joye filed a class action lawsuit in Colorado State District Court in Boulder County (the "Underlying Action") naming River Cliff as the lone defendant (ECF No. 1-1). The Underlying Action alleged that River Cliff charged unlawful and unenforceable late fees and reletting charges against its tenants, constituting a breach of contract or, in the alternative, unjust enrichment, based on tenants' and River Cliff's lease agreements (*see generally id.*). Specifically, Defendant Joye alleged that River Cliff's practice of charging $10.00 per day in late fees for unpaid rent after the first of the month is an unlawful penalty (*id.* at 5, 8). Defendant Joye alleged that she was assessed late fees of $590.00 for the months of August and September 2020, as she did not provide timely rent payment for those months (*id.*). Defendant Joye alleged that River Cliff used the threat of eviction to collect the allegedly unlawful penalties (*id.* at 6). Additionally, Defendant Joye alleged that River Cliff refused to renew her lease at the end of its term, June 30, 2021, and initiated eviction proceedings on July 27, 2021 (*id.*). The Boulder County Sheriff's Office executed a writ of execution to evict Defendant Joye on August 12, 2021 (*id.*). Finally, Defendant Joye alleged that River Cliff charged a reletting charge of $2,500.00 after she left her apartment unit, which she also classified as an unlawful penalty under Colorado law (*id.*).

Plaintiff issued a "businessowners" policy (the "Policy") to River Cliff for the policy terms of July 31, 2021 through July 31, 2022 (*see, e.g.,* ECF No. 1-2 at 1, 31). The Policy included

---

[1] The background facts in this Order are drawn from Plaintiff's Complaint (ECF No. 1), Exhibit 1 to Plaintiff's Complaint (ECF No. 1-1), Exhibit 2 to Plaintiff's Complaint (ECF No. 1-2), Exhibit 3 to Plaintiff's Complaint (ECF No. 1-3), Summons Returned as to Defendant Joye (ECF No. 14), and Plaintiff's Notice of Voluntary Dismissal of Party River Cliff Realty, LLC (ECF No. 24). *See e.g., Prudential Ins. Co. of Am. v. Sommerfield*, No. 16-cv-2819-

coverage for liability and medical expenses, covered at $2,000,000 per occurrence, and miscellaneous professional liability, covered at $100,000 in the aggregate (*see, e.g., id.* at 15, 18). This coverage is outlined in two provisions of the Policy. First, Section II of the general "Businessowners Coverage Form" ("BCF") provides coverage for business liability. Specifically, the Policy covers any damages "because of 'bodily injury,' 'property damage,' or 'personal and advertising injury'" (ECF No. 1-2 at 128). Second, the Policy contains a "Miscellaneous Professional Liability Endorsement" ("MPLE") which provides coverage for damages resulting from a claim for "'wrongful act[s]' in rendering or failing to render 'professional services' for others for a fee" (*id.* at 19). The MPLE contains exclusions for liability arising out of contractual liability and fee disputes (*id.* at 20-21).

Plaintiff "began providing River Cliff with a defense" in the Underlying Action pursuant to a Reservation of Rights letter sent "on or around" March 15, 2022 (ECF No. 1 at 10; *see also* ECF No. 1-3 at 6-8). The Reservation of Rights letter reserved Allstate's "right to seek a declaratory judgment that Allstate ha[d] no duty to defend or indemnify River Cliff" (ECF No. 1-3 at 6). Subsequently, pursuant to that Reservation, Plaintiff filed the present action on June 22, 2022, seeking declaratory judgment against both Defendant Joye and River Cliff that it had no duty to defend and indemnify River Cliff in the Underlying Action (*see generally* ECF No. 1). On July 27, 2022, Plaintiff properly served Defendant Joye (ECF No. 14). River Cliff and Allstate ultimately settled Plaintiff's claims against River Cliff in this lawsuit, and Plaintiff dismissed River Cliff with prejudice on September 16, 2022 (ECF No. 24).

WJM-KLM, 2017 WL 5989441, at *1 (D. Colo. Dec. 4, 2017) (drawing background information from similar documents to grant a motion for default judgment).

## II.  LEGAL STANDARD

The Court may enter default judgment against a party that has failed to plead or otherwise defend an action brought against it. *See* Fed. R. Civ. P. 55(b)(2). The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (internal citations omitted). "Strong policies favor resolution of disputes on their merits" and default judgment should be "available only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (internal citations omitted) (alterations omitted).

When facing a motion for default judgment, courts must first evaluate and establish their jurisdiction. *Behav. Analyst Certification Bd., Inc. v. Solis*, No. 21-cv-02131-NYW-STV, 2022 WL 17736781, at *2 (D. Colo. Dec. 16, 2022). To enter default judgment, a court must have both personal jurisdiction over each defaulting defendant and subject-matter jurisdiction over the action. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The second step of the inquiry is to evaluate whether the plaintiff's pleadings support judgment on the claims asserted against defendants. *See Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted); *see also Behavior Analyst*, 2022 WL 17736781, at *2 (stating that in determining whether to enter default judgment courts consider "whether the well-pleaded factual allegations in the [c]omplaint and any attendant affidavits or exhibits support judgment on the claims against the defendant") (citations omitted). "Court[s] accept[] the well-pleaded facts of the complaint as true on a motion for default judgment . . . ." *Wendell H. Stone Co., Inc v. Five Star Advert., LLC*, No. 19-CV-03157-PAB-STV, 2022 WL

4094067, at *6 (D. Colo. Sept. 7, 2022). Undisputed facts alleged in the affidavits or exhibits are also deemed true. *Olcott*, 327 F.3d at 1124.

Additionally, courts must ordinarily assess the amount of damages to award a plaintiff in an action for default judgment. *See Marcus Food Co. v. Dipanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011). However, where a plaintiff seeks only declaratory relief, courts "need not consider the amount of damages to award . . . ." *See Prudential Ins. Co. of Am.*, 2017 WL 5989441 at *4 (internal citations omitted).[2]

## III.  ANALYSIS

Having considered Plaintiff's Motion for Default Judgment (ECF No. 26), the Complaint (ECF No. 1), exhibits attendant to Plaintiff's Motion, and relevant legal authority, the Court grants Plaintiff's Motion for Default Judgment.

### A.  Jurisdiction

Before evaluating whether Plaintiff's pleadings support judgment on its claims, the Court must determine whether it has subject matter jurisdiction and personal jurisdiction over the defendant. *See Williams*, 802 F.2d at 1203. For the reasons set forth below, the Court has subject matter jurisdiction over this action and personal jurisdiction over Defendant Joye.

#### 1.  Subject Matter Jurisdiction

Plaintiff argues that the Court has subject matter jurisdiction over this matter (ECF No. 26 at 7-8). The Court agrees. The Court has subject matter jurisdiction over an action when there is either a federal question at issue or diversity between the parties. *See* 28 U.S.C. §§ 1331-1332. Diversity jurisdiction exists when the suit is between citizens of different states and the amount in

---

[2] Here, Allstate seeks only declaratory relief clarifying its duty to defend and indemnify River Cliff against Defendant Joye's claims in the Underlying Action. Therefore, the Court need not evaluate damages in its default judgment analysis. *See Prudential Ins. Co..*, 2017 WL 5989441 at *4.

controversy exceeds $75,000. 28 U.S.C. § 1332(a). Plaintiff is incorporated in Illinois with a principal place of business in Illinois (ECF No. 1 at 1). Therefore, Plaintiff is a citizen of the State of Illinois. *See United Nuclear Corp. v. Moki Oil & Rare Metals Co.*, 364 F.2d 568 (10th Cir. 1966) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.") (quoting 28 U.S.C. § 1332(c)). Defendant is a citizen of the State of Colorado (ECF No. 1). Accordingly, the parties are diverse for the purposes of establishing diversity jurisdiction under the statute. 28 U.S.C. § 1332(a).

Plaintiff must also establish that the amount in controversy exceeds $75,000, to show that the Court's exercise of diversity jurisdiction is proper. *See* 28 U.S.C. § 1332(a). Here, the claim is for a declaratory judgment regarding Plaintiff's duties to defend and indemnify. Regarding Plaintiff's instant action and the nature of the Underlying Action, the amount in controversy requirement is satisfied because the policy's maximum limit exceeds $75,000 (*see, e.g.,* ECF No. 1-2 at 15, 18, 41). *See also Terra Nova Ins., Ltd. v. Fort Bridger Hist. Rendezvous Site, Corp.*, 151 F. App'x 678, 680 (10th Cir. 2005).[3] For example, under the Policy here, the limit of the insurer's liability is $2,000,000 under the BCF and $100,000 under the MPLE (*See, e.g.,* ECF No. 1-2 at 41).

---

[3] Other cases indicate that the Court must determine the amount in controversy with reference to the amount at issue—i.e., the amount that in the Underlying Action an insured seeks from the insurer. *See, e.g., Allstate Assurance Co. v. Landa*, No. 19-CV-00392-PAB-STV, 2019 WL 5269426, at *3 (D. Colo. Aug. 29, 2019), *report and recommendation adopted*, No. 19-CV-00392-PAB-STV, 2019 WL 5261625 (D. Colo. Oct. 16, 2019). Defendant Joye, in the Underlying Action, did not offer a specific quantification of her damages in her request for relief (ECF No. 1-1 at 10). Even looking at the nature of the Underlying Action, determining the amount of controversy requirement on this basis is satisfied. Given the nature of Defendant Joye's class action allegations—in which she alleges "hundreds of tenants" fall into her class definition of people who were charged late fees or reletting charges by River Cliff—and the sum that she was allegedly overcharged, there is no indication that Defendant Joye's request for relief from River Cliff would be less than $75,000 in the Underlying Action (*see, e.g.,* ECF No. 1-1 at 7, 9-10).

Accordingly, the maximum limit of Plaintiff's liability under the Policy exceeds $75,000. Moreover, based on the nature of Defendant Joye's class action allegations in the Underlying Action, River Cliff was exposed to over $75,000 in potential costs for which it could seek insurance from Plaintiff (*see, e.g.,* ECF No. 1 at 1-2, ECF No. 1-3 at 1). For these reasons, there is a sufficient basis for the court to conclude that the amount in controversy requirement has been met. *See Behavior Analyst*, 2022 WL 17736781, at *2. Therefore, the Court agrees with Plaintiff that it has properly met its burden to show diversity jurisdiction between the parties, and the Court concludes it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (*see* ECF No. 26 at 7).

### 2. Personal Jurisdiction

Plaintiff also contends in its Motion that the Court has personal jurisdiction over Defendant Joye (ECF No. 26 at 7-8). The Court agrees. "[T]he plaintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997). Defendant Joye is a citizen of Colorado and was served with process in Colorado (ECF No. 14). Therefore, here, Plaintiff has made a *prima facie* showing of personal jurisdiction, and, accordingly, the Court concludes that it has personal jurisdiction over Defendant Joye. *See, e.g., United States v. Elsberg*, No. 08-CV-00552-MSK-KLM, 2010 WL 5177439, at *3–4 (D. Colo. Aug. 17, 2010), *report and recommendation adopted*, (D. Colo. Nov. 5, 2010); *Prudential Ins. Co. of Am. v. Sommerfield*, No. 16-CV-2819-WJM-KLM, 2017 WL 5989441, at *4 (D. Colo. Dec. 4, 2017), *report and recommendation adopted*, No. 16-CV-2819-WJM-KLM, 2017 WL 6945039 (D. Colo. Dec. 22, 2017); Fed. R. Civ. P. 4.

7

Having established that these jurisdictional requirements are satisfied, the Court proceeds to the second step in its analysis of Plaintiff's Motion—whether Plaintiff's pleading support judgment on its claims. *See Tripoldi*, 810 F.3d at 765.

## B. Duty to Defend

In its Motion, Plaintiff argues it has no duty to defend River Cliff in the Underlying Action and, accordingly, that default judgment should be entered (*see* ECF No. 26 at 8). The Court agrees.

The question of whether a duty to defend exists is a question of law for a court's determination. *See Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.,* 593 F.3d 1188, 1193 (10th Cir. 2010). Because this case is brought under diversity jurisdiction, the Court applies Colorado law to evaluate Plaintiff's duty to defend. *See id.* at 1192. In Colorado, courts follow the "complaint rule," under which the existence of an insurer's duty to defend is determined by looking at the face of the underlying complaint. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 828-29 (Colo. 2004). The Court "must compare the allegations in the underlying complaint and the relevant provisions of the insurance policy." *Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-cv-00560-REB-MEH, 2014 WL 811993, at *11 (D. Colo. Mar. 3, 2014) (citation omitted).

"An insurer seeking to avoid its duty to defend an insured bears a heavy burden." *Compass Ins. Co. v. City of Littleton,* 984 P.2d 606, 613-14 (Colo. 1999). Any facts alleged in the underlying complaint that may fall within the policy's coverage will trigger the duty to defend. *Id.* "[T]he insurer must accept the defense of the claim" if a claim "is potentially or arguably within the policy coverage." *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo. 1991).

Examining the complaint in the Underlying Action and the Policy, the Policy is a general "businessowners" policy. Plaintiff directs the Court to two provisions of the Policy that potentially

cover Defendant Joye's claims: the BCF and the MPLE (ECF No. 26 at 9; ECF No. 1-2 at 128-49, 18-28). The Court considers the applicability of these provisions in turn.

      *1.   The BCF*

First, Plaintiff asserts that the BCF does not provide coverage for Defendant Joye's claims against River Cliff in the Underlying Action (ECF No. 26 at 9). The BCF provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which th[e] insurance applies" (ECF No. 1-2 at 128). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" (*id.* at 140). Defendant Joye makes no allegations in her complaint in the Underlying Action that qualify as "bodily injury," as defined in the Policy (*see generally* ECF No. 1-1). Therefore, the BCF does not provide coverage for River Cliff against Defendant Joye's claims in the Underlying Action under the "bodily injury" coverage provision in the BCF (*See* ECF No. 1-1).

Second, as Plaintiff contends, Defendant Joye asserts no claims of property damage, as defined in the Policy's BCF, on the face of her complaint (*See generally* ECF No. 1-1; ECF No. 26 at 11). "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property" and "[loss] of use of tangible property that is not physically injured" (ECF No. 1-2 at 143). Defendant Joye, in the Underlying Action, makes claims of unlawful fees, breach of contract, and, in the alternative, unjust enrichment (*See generally* ECF No. 1-1). Defendant Joye also refers to her eviction from her River Cliff apartment in the Underlying Action (*id.* at 6). She states that River Cliff "refused to renew [her] lease at the end of her lease term even though [she] had paid all amounts River Cliff had demanded during the lease term at that time" and that, upon the end of her lease term, River Cliff "demanded that [she] vacate

and surrender possession of the Property" (*id.*). Eventually, "River Cliff initiated a forcible entry and detainer action and obtained a judgment for possession against [Defendant] Joye" after she did not vacate her apartment (*id.*).

Courts have considered claims of "constructive eviction" to fall under insurance policy provisions providing coverage for the "[l]oss of use of tangible property." *See Mike Lee, Co. LLC v. Nationwide Mutual Ins. Co.*, 19-cv-00006-KLM, 2020 WL 8370081, at *9 (D. Colo. June 1, 2020). Therefore, Defendant Joye's allegations could be considered a "[loss] of use of tangible property" (ECF No. 1-2 at 143). *See also Compass*, 984 P.2d at 613-14. However, unlike the plaintiff in the underlying action in *Mike Lee*, who brought a claim of constructive eviction, Defendant Joye brought no actual claims resulting from her eviction and does not allege that this eviction was brought wrongfully. *Cf. Mike Lee, Co. LLC*, 2020 WL 8370081 at *3, 9-10. Instead, Defendant Joye alleges that she was evicted after failing to pay her rent in full (ECF No. 1-1 at 6). Therefore, the Underlying Action only asserts claims arising out of the contract (the lease agreement) between River Cliff and Defendant Joye. No claim for property damage is "potentially or arguably within the policy coverage" because no claim was made regarding Defendant Joye's eviction. *Hecla Mining Co.,* 811 P.2d at 1089; *see also Hommel v. George*, 802 P.2d 1156, 1158–59 (Colo. App. 1990). For these reasons, the Court agrees with Plaintiff that the BCF's "property damage" provision is inapplicable (*see* ECF No. 26 at 11).

Finally, the "personal or advertising injury" provision—the only possible remaining coverage for River Cliff against Defendant Joye's claims under the BCF—does not apply (*See* ECF No. 1-2 at 140, 143). The Policy defines a "personal and advertising injury," in relevant part, as injury "arising out of . . . the wrongful eviction from . . . dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor" (*id.* at 142). Here, Defendant

Joye makes no claims of personal or advertising injury in her complaint. As previously mentioned, Defendant Joye references her eviction from the property in the Underlying Action (ECF No. 1-1 at 6). However, she makes no claims regarding this eviction or allegations that this eviction was "wrongful"—instead, her class action claims are contractual in nature (*See* ECF No. 1-2 at 142; *see also* ECF No. 1-1 at 6). Defendant Joye alleges that she had "insufficient funds to tender rent for subsequent months in a timely fashion" and was evicted based on River Cliff's reletting practices, as well as that following her eviction River Cliff sought $2,500.00 from Defendant Joye (ECF No. 1-1 at 6).

Each of Defendant Joye's three claims deals with the contract between River Cliff and Defendant Joye (the lease agreement) and the allegedly unlawful fees charged to Defendant Joye under that agreement (*see id.* at 8-11). Fundamentally, Defendant Joye's claims concern and arise from River Cliff's "*Reletting Charge* [which is] an [allegedly] unlawful penalty under Colorado law," and Defendant Joye initiated the Underlying Action on the grounds that "Colorado law [allegedly] prohibits the *charging and collecting of unlawful penalties*" (ECF No. 1-1 at 6) (emphasis added). Therefore, there are no allegations "arising out of . . . wrongful eviction" on face of Defendant Joye's complaint, as Defendant Joye does not assert claims dealing with her eviction and does not assert that this eviction was wrongful (*See generally* ECF No. 1-1).

For the reasons set forth above, Defendant Joye does not allege "bodily injury," "property damage," or "personal or advertising injury" as defined by the BCF on the face of her complaint in the Underlying Action (ECF No. 1-2 at 128). Accordingly, there is no coverage under the provisions of the BCF for River Cliff against Defendant Joye's claims in the Underlying Action. Defendant Joye also has not adduced any additional evidence showing coverage is warranted under the BCF (*See* ECF No. 1-1). Therefore, the BCF does not provide River Cliff coverage against

Defendant Joye's claims, and, as such, does not trigger Plaintiff's duty to defend River Cliff in the Underlying Action initiated by Defendant Joye.

      *b. The MPLE*

Plaintiff next argues that the MPLE does not provide coverage for River Cliff against Defendant Joye's claims in the Underlying Action (ECF No. 26 at 12). The Court agrees. The MPLE covers "'damages' resulting from a 'claim' . . . for your 'wrongful act' in rendering or failing to render 'professional services' for others for a fee" (*id.* at 19). "Wrongful act" is defined as "any actual or alleged negligent act, error or omission, misstatement or misleading statement, including any of the foregoing that results in a 'personal injury peril'" (*id.* at 28). The "professional services" of River Cliff are defined, in their Policy, as "Real Estate Agents and Brokers – Office" (ECF No. 1-2 at 18). Therefore—in querying whether the entry of default judgment is warranted—executing a lease agreement with a tenant such as Defendant Joye could be considered "rendering . . . professional services" under the Policy, and for this reason that she asserts claims in the Underlying Action that fall within MPLE's coverage (*See id.* at 19). *See also In re Rains*, 946 F.2d at 732. For instance, Defendant Joye, in the Underlying Action, makes allegations of unlawful fees assessed by River Cliff under the lease agreement and breach of the lease agreement (ECF No. 1-1). Nonetheless, and notwithstanding the strong policies favoring resolution of cases on their meris, the Court agrees with Plaintiff that, pursuant to the exclusions in the MPLE, no coverage exists in the MPLE for River Cliff against Defendant Joye's claims in the Underlying Action (*see* ECF No. 26 at 13). *See also In re Rains*, 946 F.2d at 732.

The MPLE contains several exclusions. Plaintiff directs the Court to two: Exclusion A.16, and Exclusion A.4, under which Plaintiff argues no coverage exists for the Underlying Action (*see*

ECF No. 1-2, 26 at 12). The Court agrees, considering the applicability of these MPLE Exclusions in turn.

First, Exclusion A.16 precludes coverage for liability arising out of disputes over "your fees or charges, including over-charges, or cost over-runs," the collection of fees from third-parties, return of fees or "other compensation paid to you," and the cost of "correcting or re-perfoming or completing any 'professional services'" (ECF No. 1-2 at 21). Defendant Joye asserts three claims in her complaint: (1) declaratory relief concerning her rights under the lease agreement, and injunctive relief regarding River Cliff's collection of late fees and reletting charges; (2) breach of contract; and (3) unjust enrichment, in the alternative (ECF No. 1-1 at 8-10). Her claim for declaratory and injunctive relief concerns the lease agreement and the allegedly unlawful fees assessed under the agreement (*id.* at 8-9). Therefore, this claim concerns River Cliff's allegedly unlawful fees. Given the nature of this claim, it is excluded under Exclusion A.16 of the Policy, which concerns fee disputes (*See* ECF No. 1-2 at 20-21). Defendant Joye's second and third claims similarly concern the lease agreement and fees assessed by River Cliff, and for this reason also fall within Exclusion A.16 (*see* ECF No. 1-1 at 9-10). At bottom, the Court agrees with Plaintiff that Exclusion A.16 precludes coverage because the Underlying Action arises from "over-charges," Defendant Joye's request for "the return of fees paid to River Cliff," and Defendant Joye's request that River Cliff correct its allegedly unlawful professional services (ECF No. 26 at 12). Therefore, all three of Defendant Joye's claims fall within Exclusion A.16, for the reason that they concern River Cliff's allegedly unlawful conduct related to its contractual agreement with Defendant Joye, and its imposition and collection of late fees (*id.*; *see also* ECF No. 1-2 at 20-21). Accordingly, on the face of Defendant Joye's complaint in the Underlying Action, she makes no claims that fall within the Policy's coverage under Exclusion A.16.

Second, Exclusion A.4 in the MPLE excludes coverage for "liability arising out of 'property damage,'" where "property damage" is defined as "physical injury to, or loss or destruction of, tangible property including the loss of use thereof; or loss of use of tangible property which has not been physically injured or destroyed" (ECF No. 1-2 at 27). This definition is substantively similar to the definition of "property damage" contained in the BCF (*see id.* at 143). Although the MPLE's definition of "property damage" also includes "loss or destruction," and the "loss of use of tangible property which has not been . . . destroyed," these differences do not meaningfully differentiate Exclusion A.4 from the definition of "property damage" in the BCF (*Compare id.* at 27, *with id.* at 143). Therefore, the Court agrees with Plaintiff that—for the same reasons set forth in its discussion of the BCF's applicability—no coverage exists under the MPLE, given the language of Exclusion A.4 and the nature of Defendant Joye's underlying action (ECF No. 26 at 12-13).

Finally, Plaintiff contends that no coverage exists under the MPLE because the MPLE provides coverage for a "wrongful act," and Defendant Joye has not alleged any "wrongful act" that would fall within the ambit of the MPLE's coverage (ECF No. 26 at 12). Recall that the MPLE defines "wrongful act" as an enumerated action that "results in a 'personal injury peril,'" where "personal injury peril" is defined as "false arrest, detention or imprisonment; malicious prosecution; [t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies," and publication of slanderous or libelous material (ECF No. 1-2 at 27-28). The only relevant definition regarding wrongful evictions does not apply, however, because—for the reasons set forth in the Court's discussion of the BCF's "personal or advertising injury" provision, which contains substantively identical Policy language—the gravamen of Defendant Joye's Underlying Action does *not* concern a wrongful

eviction. It concerns River Cliff's alleged charging and collection of unlawful penalties (*see generally* ECF No. 1-1). Therefore, the Court agrees with Plaintiff that the MPLE does not, given the nature of the Underlying Action, provide coverage (*see* ECF No. 26 at 12).

As such, the Underlying Action does not trigger coverage for liability under the BCF or MPLE in the Policy for River Cliff against Defendant Joye's claims. Because the Court finds that there is no coverage under the Policy, the Court further concludes that Plaintiff has no duty to defend in the Underlying Action. *See Cotter Corp.,* 90 P.3d at 828.

### C. Duty to Indemnify

The Court next considers whether Plaintiff has a duty to indemnify River Cliff for Defendant Joye's claims. "[W]here there is no duty to defend, there is no duty to indemnify." *Travelers Indem. Co. of Am. v. Luna Gourmet Coffee & Tea Co. LLC*, 533 F. Supp. 3d 1013, 1026 (D. Colo. 2021). Accordingly, because the Court has found that Plaintiff has no duty to defend, the Court also finds that Plaintiff has no duty to indemnify. *See id.*

### D. Declaratory Judgment

Finally, the Court considers whether to grant Plaintiff's request for a declaratory judgment in this action. Plaintiff contends that, under the governing legal framework, the Court should enter a declaratory judgment (ECF No. 26 at 13). The Court agrees.[4]

"Because declaratory judgment acts are procedural rules," federal law dictates whether a district court "may properly enter a declaratory judgment in a diversity case." *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1194-95 (D. Colo. 2018) (citation omitted). Federal courts are "empowered to grant declaratory relief following default." *Philadelphia Indem. Ins. Co.*

---

[4] Plaintiff brings one claim in its Complaint for a "Declaratory Judgment" on its "Duty to Defend and Indemnify" against "All Defendants," and seeks relief in the form of a "declaratory judgment that [Plaintiff] has no duty to defend," a "declaratory judgment that [it] may withdraw the defense it is currently providing to River Cliff under [its] Reservation of Rights," and "enter a declaratory judgment" that it has no duty to indemnify (ECF No. 26 at 10-12).

*v. Asperi*, No. 18-cv-02372-CMA-NRN, 2019 WL 588193, at *2 (D. Colo. Feb. 13, 2019). This power stems from the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. *See id.* Under the Act, "declaratory relief is appropriate '(i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" *Id.* (quoting *Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002)). To grant declaratory relief under the statute, an "actual controversy" must exist, meaning that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Even if an actual controversy exists, granting a declaratory judgment is discretionary. *See Amair, Inc. v. Gapex Aviation SP. Z o.o.*, No. 15-cv-02596-CMA-KLM, 2019 WL 1651828, at *4 (D. Colo. Apr. 17, 2019); *see also St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995) ("[T]he question of whether this power should be exercised in a particular case is vested in the sound discretion of the district courts.") (citation omitted). In determining whether to grant a declaratory judgment action, the Tenth Circuit has outlined five factors (the "*Mhoon* factors") to consider:

> (1) whether action would settle [the] controversy; (2) whether it would serve useful purpose in clarifying legal relations at issue; (3) whether declaratory remedy is being used merely for purpose of "procedural fencing" or "to provide arena for race to res judicata"; (4) whether use of declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is alternative remedy which is better or more effective.

16

*State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994) (quotation omitted). The Court addresses these factors below, concluding that they weigh in favor of the Court exercising its discretionary declaratory judgment authority in favor of Plaintiff.

### 1. *Whether An "Actual Controversy" Exists*

First, the Court must determine whether the declaratory judgment action constitutes an "actual controversy." *See MedImmune, Inc.,* 549 U.S. at 127. The Court agrees with Plaintiff that an actual controversy exists (ECF No. 26 at 14). Here, this case involves "an extant controversy between parties" and does not "merely call [upon the Court] to supply an advisory opinion about a hypothetical dispute." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1242 (10th Cir. 2008). Further, there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.,* 549 U.S. at 127. Plaintiff brought this action against Defendants River Cliff and Defendant Joye to determine whether it had a duty to defend River Cliff in Defendant Joye's Underlying Action. And, as discussed above, Plaintiff has no duty to defend or indemnify River Cliff in the Underlying Action. Therefore, an actual—not hypothetical—controversy exists, and the Court must now address the *Mhoon* factors to determine whether the Court should exercise its discretionary declaratory judgment authority. *See Surefoot*, 531 F.3d 1242.

### 2. *Whether the Action Would Settle the Controversy*

The first *Mhoon* factor, whether the action would settle the controversy, weighs in favor of granting declaratory relief for Plaintiff. The "instant action would fully settle the controversy of whether [Plaintiff has] a duty to defend or indemnify . . . the claims asserted in the Underlying [Action]." *New Hampshire Ins. Co. v. TSG Ski & Golf, LLC*, No. 21-cv-01873-CMA-NYW, 2022 WL 1184547, at *4 (D. Colo. Apr. 21, 2022); *see also Addison Ins. Co. v. Rippy*, No. 08-cv-00237-

PAB-MJW, 2009 WL 723322, at *5 (D. Colo. Mar. 18, 2009) ("A declaration by th[e] [c]ourt would determine whether or not [the plaintiff] must continue to represent and eventually indemnify the [m]ovants, thereby settling the controversy."). As Plaintiff notes, it seeks a declaration that it has no duty to defend River Cliff in the Underlying Action (ECF No. 26 at 15). Granting Plaintiff declaratory relief regarding its duty to defend would determine whether it must defend River Cliff in the Underlying Action and Defendant Joye's claims against it. Therefore, the controversy would be settled by granting Plaintiff's Motion, and for this reason this factor weighs in favor of Plaintiff. *See also Ace Am. Ins. Co. v. Dish Network, LLC*, No. 13-CV-00560-REB-MEH, 2014 WL 811993, at *14 (D. Colo. Mar. 3, 2014) (finding first *Mhoon* factor weighed in favor of declaratory judgment action where plaintiff "sought an order declaring that, under the applicable insurance policies, [it owed] no duty to defend (and, thus, no duty to indemnify) [the defendant] in the [underlying] lawsuit").

### 3. *Whether It Would Clarify the Legal Relations at Issue*

The second *Mhoon* factor, whether declaratory judgment would serve a useful purpose in clarifying the legal relations at issue, also weighs in favor of granting Plaintiff's Motion. "[T]his insurance coverage dispute deals squarely with legal relations, and the Court's adjudication will necessarily clarify the obligations owed by Plaintiff." *New Hampshire Ins. Co.*, 2022 WL 1184547, at *4 (quotations omitted). As Plaintiff argues, this action will decide whether Plaintiff needs to defend and indemnify River Cliff in Defendant Joye's Underlying Action (*see* ECF No. 26 at 15). Additionally, "[o]ne of the primary purposes of the Declaratory Judgment Act is to provide an insurer with a forum to establish nonliability," and therefore granting declaratory relief on Plaintiff's duty to defend and indemnify River Cliff, given the nature of Defendant Joye's claims in the Underlying Action, is "useful in clarifying important legal relations" between Plaintiff and

Defendants. *St. Paul Fire & Marine Ins. Co. v. Jones*, No. 20-cv-0389-WJM-GPG, 2021 WL 5415869, at *3 (citations omitted); *see also Addison Ins. Co.*, 2009 WL 723322 at *5.

>    4.   *Whether the Remedy is Being Used for "Procedural Fencing" or as a "Race to Res Judicata"*

The third *Mhoon* factor, whether the remedy of a declaratory judgment is being used merely for "procedural fencing" or as a "race to *res judicata*," similarly weighs in favor of granting Plaintiff's request for declaratory relief. The Court agrees with Plaintiff that, after reviewing the case file and Plaintiff's Motion, "there is no indication" that Plaintiff is attempting to engage in "procedural fencing" or a "race to *res judicata*" (ECF No. 26 at 15). *Olave v. Am. Fam. Mut. Ins. Co., S.I.*, No. 21-cv-02908-CMA-NYW, 2022 WL 2817630, at *8 (D. Colo. July 18, 2022), *report and recommendation adopted,* No. 21-cv-02908-CMA-MDB, 2022 WL 3280156 (D. Colo. Aug. 11, 2022) (quotations omitted). Additionally, although this action was brought prior to resolution of the Underlying Action, "well-settled law [permits] a declaratory judgment action brought before resolution of an underlying case." *New Hampshire Ins. Co.*, 2022 WL 1184547 at *4. As such, granting Plaintiff's request for declaratory relief is appropriate under this factor. *See St. Paul Fire*, 2021 WL 5415869 at *4.

>    5.   *Whether Granting a Declaratory Judgment Would Increase Friction Between State and Federal Courts*

The fourth *Mhoon* factor, whether granting a declaratory judgment would increase friction between federal and state courts, also weighs in favor of granting Plaintiff's Motion. *See New Hampshire*, 2022 WL 1184547, at *5. This factor "focuses on whether use of the declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Id.* (quotations omitted); *see also id.* ("[W]here it could unduly prejudice the insured in the underlying action, a declaratory judgment action prior to entry of judgment against the

insured is not independent and separable and is inappropriate.") (quotations omitted). Fundamentally, "[a] federal court will generally not entertain jurisdiction in a declaratory action if the identical issues are involved in another pending proceeding." *Addison*, 2009 WL 723322, at *5 (quotations omitted) (alteration added).

To the extent that Plaintiff argues that the fourth *Mhoon* factor does not apply because this is a federal insurance action, the Court agrees (ECF No. 26 at 15). "[A] federal court is an appropriate venue for an insurer to litigate questions regarding its duties under a policy, even though the federal action implicates an ongoing state court case." *Addison*, 2009 WL 723322 at *5. Plaintiff appropriately brought this case in federal court, seeking a declaration regarding its duties to defend and indemnify, while the Underlying Action, which concerns non-insurance contractual disputes, is being litigated in state court. Declaratory action is appropriate when "[t]he duty to defend issue . . . involve[s] only an examination of the state court complaint to see if its allegations of fact triggered the duty [to defend or indemnify]." *Mhoon*, 31 F.3d at 984 (alterations added). The inquiry in this case does not involve any factual or legal matter at issue in the state case regarding the contractual dispute between Defendant Joye and River Cliff. *See id.*; *see also New Hampshire Ins. Co.*, 2022 WL 1184547 at *5 ("[T]he [c]ourt is faced with the purely legal question of whether the allegations in the [u]nderlying [c]omplaint give rise to a duty to defend or indemnify under the relevant policies—this action does not require the [c]ourt to wade into a factual dispute [in the underlying action].").

As such, this inquiry likely would not threaten "any substantial interference in the state court proceedings." *Mhoon*, 31 F.3d at 984. Therefore, this action is "independent and separable" from the Underlying Action, and granting declaratory judgment would not unduly interfere in state court proceedings. *Mhoon*, 31 F.3d at 984; *New Hampshire Ins. Co.*, 2022 WL 1184547 at *5.

*6.   Whether an Alternative Remedy Is Better or More Effective*

Finally, the fifth *Mhoon* factor, whether an alternative remedy is better or more effective, also weighs in favor of granting declaratory relief. Here, "the Underlying [Action] will not determine the duty to defend and coverage issues raised in this declaratory action," and Plaintiff has a strong interest "in resolving this action before potentially expending considerable resources in the state court litigation." *New Hampshire Ins. Co.*, 2022 WL 1184547 at *6 (citation omitted). Therefore, the remedy in this case, a declaration of Plaintiff's duties to defend and indemnify, is an effective remedy. For this reason the Court agrees with Plaintiff that the Underlying Action does not present any "issues" regarding the fifth *Mhoon* factor (ECF No. 26 at 15).

\* \* \*

For the reasons set forth above, the Court's exercise of subject matter jurisdiction over this matter and personal jurisdiction over Defendant Joye is proper. Plaintiff has no duty to defend or indemnify in the Underlying Action, and the *Mhoon* factors favor the Court's exercise of its discretionary declaratory judgment authority in favor of Plaintiff. Therefore, the Court grants Plaintiff Allstate's Motion for Default Judgment.

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Default Judgment (ECF No. 26) and ORDERS that:

(1) JUDGMENT is hereby entered in favor of Plaintiff and against Defendant Joye;

(2) No benefits, defense, or indemnity are owed under the Policy for the claims, damages, or losses suffered by Defendant Joye;

(3) The Clerk is directed to enter FINAL JUDGMENT against Defendant Joye.

DATED this 9th day of May 2023.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge